**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

UNITED STATES OF AMERICA,

Plaintiff,

v.

ISRAEL CORREA,

Defendant.

Case No.:  24-cv-02507-DMS
20-cr-00658-DMS

**ORDER DENYING DEFENDANT'S MOTION FOR PETITION FOR A WRIT OF HABEAS CORPUS PUSRUANT TO 28 U.S.C. § 2255**

Before the Court is Defendant's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2255.  (Pet., ECF No. 65-1.)[1]  The Government responded in opposition.  (Opp'n, ECF No. 67.)  Defendant filed a reply.  (ECF No. 68.)  Upon this Court's Order, (ECF No. 69), Defendant's former criminal defense counsel filed a declaration, (Att'y Decl., Suppl. Opp'n Ex. A, ECF No. 70), to which Defendant replied.  (ECF No. 71.)  For the following reasons, Defendant's motion is denied.

**I.    BACKGROUND**

Defendant became a Deferred Action for Childhood Arrivals ("DACA") candidate in 2012.  (Pet. 6.)  In November 2019, he was indicted on three counts of 18 U.S.C. § 1956 (knowingly conducting and attempting to conduct a financial transaction which involved property represented to be the proceeds of a specified unlawful activity, specifically

---

[1] Citations refer to docket of case number 20-cr-00658-DMS.

distribution of controlled substances, knowing that the transaction was designed to conceal and disguise the nature, location, source, ownership, and control of the proceeds, with the funds at issue amounting to $14,000, $50,000 and $50,000).  (ECF No. 1.)  He was arraigned before Magistrate Judge Michael Berg on January 5, 2022.  (ECF No. 3.)

Defense counsel determined, based on the evidence against Defendant, there "was a very low chance of success at trial."  (*Id.* ¶ 3.)  Such evidence included recordings of Defendant agreeing with an undercover agent to commit the charged offense, videos of him engaging in a money laundering scheme, and emails corroborating the recordings.  (*Id.*)  Defense counsel reportedly explained to Defendant that "there was a high probability" he would lose at trial; plausible defenses, such as entrapment, would "fall short in comparison to the weight of the evidence"; and Defendant would lose certain downward departures under the sentencing guidelines if he did not accept a plea deal.  (*Id.* ¶¶ 3–4.)  Defense counsel also advised Defendant to speak with an immigration attorney regarding the potential immigration consequences if he accepted a plea deal or went to trial.  (*Id.* ¶ 5.)  In or around August 2022, Defendant told defense counsel that he retained an immigration attorney.  (*Id.*)  Defense counsel emailed the immigration attorney a copy of Defendant's indictment and to discuss potential immigration consequences.  (*Id.*)  At the end of August 2022, the immigration attorney told defense counsel that he would consult with a colleague "who was better versed in immigration criminal consequences."  (*Id.*)  On September 19, 2022, defense counsel sent the immigration attorney a proposed plea agreement.  (*See id.* ¶¶ 5, 7.)  The immigration attorney replied, "the plea offer did not help [Defendant's] immigration status in any way."  (*Id.* ¶ 5.)  A few days later, the two attorneys spoke on the phone and agreed that an alternative plea agreement "would minimize [Defendant's] immigration consequences."  (*Id.*)  Defense counsel states that he "thoroughly discussed" these conversations with Defendant.  (*Id.*)

Defense counsel reports that it was not possible to negotiate a plea deal that did not result in virtually certain removal or deportation.  (*Id.* ¶ 7.)  While defense counsel told the Assistant United States Attorney ("AUSA") that the plea agreement would result in

virtually certain removal or deportation, the AUSA was not amendable to a plea agreement that included a different offense or an amount less than $10,000 due to the substantial evidence against Defendant.  (*Id.*)

Defense counsel informed Defendant that his immigration status "*would likely be in jeopardy* if he accepted any plea agreement."  (*Id.* (emphasis added).)  He also advised Defendant that "any immigration removal proceedings might be minimized" if the Government agreed to a plea agreement with no crime of moral turpitude, a custodial sentence of less than 365 days, an amount less than $10,000, and no mention that the proceeds came from the distribution of controlled substances, but even then it was "*highly probable* he would be . . . removed from the United States."  (*Id.* (emphasis added).)  Defense counsel told Defendant that if he lost at trial, he would "*likely*" be removed and his ability to contest removal would be "greatly minimized" because "his conviction would include the money was the proceeds of a controlled substance and his custodial sentence could be greater than 365 days," and thus "his ability to fight the removal proceeding would be significantly diminished as opposed to taking a plea deal."  (*Id.* ¶ 6 (emphasis added).)  Defense counsel also advised Defendant that by taking a plea deal, counsel could argue for a minimal custodial sentence "which would potentially help with his immigration status."  (*Id.* ¶ 4.)

Defendant alleges that prior to the plea, his counsel "encouraged" Defendant to plead guilty and advised him that he would face only the "possibility" of removal or deportation.  (Pet. 2–3, 7.)  Defendant entered into a plea agreement on December 8, 2022, admitting to three counts of § 1956(a)(3)(B).  (Plea Agreement, ECF No. 29, at 2–3, 17.)  The agreement was signed by the AUSA, Defendant's former defense counsel, and Defendant, and the bottom of each page was initialed by Defendant.  (*See generally id.*)  The agreement states, "Defendant has been advised by counsel and understands that because defendant is not a citizen of the United States, defendant's conviction in this case make[s] it *practically inevitable and a virtual certainty* that defendant will be removed or deported from the United States."  (*Id.* at 8 (emphasis added).)  The agreement also states that "Defendant

24-cv-02507-DMS
20-cr-00658-DMS

further understands that the conviction in this case *may* subject Defendant to various collateral consequences, including but not limited to deportation, removal or other adverse immigration consequences." (*Id.* at 9 (emphasis added).)

The change of plea hearing occurred on February 8, 2023, before Judge Berg. (ECF No. 27.) Defendant pled guilty to three aggravated money laundering felonies. (Pet. 2.) At the change of plea hearing the following colloquy occurred:

> The Court:   Are each of you a United States Citizen?
> (Intervening matters.)
> The Court:   Mr. Correa, are you?
> The Defendant:     I am not.
> The Court:   And is this a *virtual certainty*, Mr. Mellor [from the United States Attorney's Office]?
> Mr. Mellor: Yes, your Honor.   With this conviction, there is a *virtual certainty* that Mr. Correa will be deported back to the country of origin."
> The Court:   Do you understand, Mr. Correa, as a result of your guilty plea, you *will* be deported or removed from the United States as a result of that guilty plea?
> The Defendant:     Yes.

(*Id.*, Ex. A, at 7 (emphases added).)  Additionally, Defendant confirmed that the initials at the bottom of each page and the signature on the plea agreement were his. (*Id.*, Ex. A, at 4.)  Judge Berg asked if Defendant read the plea agreement or had the agreement read to him in his native language, to which Defendant answered affirmatively. (*Id.*)  Defendant also confirmed that he did not have any questions regarding the plea agreement. (*Id.*)  However, Petitioner now contends that at the time of the change of plea hearing, Defendant did not know that pleading guilty to the three felonies would result in "virtually certain" (meaning, "mandatory") removal or deportation and defense counsel failed to properly warn him, before or after he pled guilty, that "virtual certainty" means "mandatory." (*Id.* at 2–3.) Defendant did not "fully understand" the meaning of the phrase "virtual certainty," because he is primarily Spanish-speaking. (*Id.*)

On March 21, 2023, Defendant attended a presentence report interview with Senior Probation Officer Emily M. Kilduff; his former counsel and a private investigator were

24-cv-02507-DMS
20-cr-00658-DMS

also present. (*Id.* at 1.)  When asked about his immigration status, Defendant reported that his DACA status remained valid through August 2023, and while he was "uncertain how the instant offense will impact his ability to remain in the U.S. legally," "[h]e has been in contact with an immigration attorney and is hopeful that his legal status will not change." (*Id.* (emphases omitted).)  No one corrected Defendant or informed him that he was actually facing "virtually certain" removal or deportation.  (*See id.*)  Defendant contends that these statements demonstrate that he had been "improperly warned about the consequences of his guilty pleas." (*Id.* at 9.)

On July 14, 2023, Defendant was sentenced by the undersigned judge to eight months in custody and three years of supervised release.  (*Id.*, Ex. D, at 1; Opp'n 2.)  At sentencing, defense counsel said that Defendant "is *highly likely* to lose his DACA status." (Pet., Ex. D, at 5 (emphasis added).)  Then, the undersigned judge told Defendant that "[t]here *may be* significant collateral consequences . . . with respect to your DACA status." (*Id.*, Ex. D, at 10 (emphasis added).)  Defendant maintains that after the sentencing hearing, he did not believe he would be facing mandatory deportation.  (*Id.*, Ex. E, ¶ 12.)  Defendant learned from a separate immigration lawyer "long after" he pled guilty that pleading to three aggregated felonies would lead to mandatory detention.  (*Id.* at 11–12.)

On February 22, 2024, this Court granted Defendant's unopposed motion to reduce his sentence to time served.  (ECF No. 56.)  Defendant is currently on supervised release. Defendant now petitions this Court to vacate, set aside, or correct his sentence pursuant to § 2255 based on ineffective assistance of counsel.

## II.    LEGAL STANDARD

A person in custody may move the federal court that imposed a sentence upon him to vacate, set aside, or correct that sentence on the ground that:

> the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack[.]

28. U.S.C. § 2255(a).  If the court determines that relief is warranted under § 2255, it must

"vacate and set the judgment aside" and "discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." *Id.* § 2255(b).

### III.    DISCUSSION

#### A.    Procedural Issues

As a preliminary matter, a "probationary term is sufficient custody" to confer § 2255 jurisdiction. *United States v. Spawr Optical Rsch., Inc.*, 864 F.2d 1467, 1470 (9th Cir. 1988). While Defendant is no longer incarcerated, he remains on supervised release. Accordingly, the Court may adjudicate this matter.

Next, the Government contends that generally "a defendant who fails to raise a claim on direct appeal is barred from raising it on collateral review," unless "he shows cause and prejudice for his procedural default." (Opp'n 4 (citation omitted).) The Government argues that because Defendant "failed to appeal his conviction and sentence and does not attempt to explain that new evidence supports why he may bring his dispute now," his petition is procedurally deficient. (*Id.*) The Government also argues that Defendant "waived" his arguments by not raising them on direct appeal. (*Id.* at 5.) However, Defendant correctly argues that "[g]enerally, [the Appeals Court] will not entertain ineffective assistance of counsel claims on direct appeal because the record is often undeveloped as to what counsel did, why it was done, and what, if any, prejudice resulted." *United States v. Singh*, 979 F.3d 697, 732 (9th Cir. 2020) (citation and internal quotation marks omitted); *see also, e.g.*, *U.S. v. Manukyan*, 247 Fed. App'x 80, 81 (9th Cir. 2007) (declining to consider ineffective assistance of counsel claim on direct appeal). The Ninth Circuit will "consider an ineffective assistance claim on direct only where the record is sufficiently developed to permit review and determination of the issue, or the legal representation is so inadequate that it obviously denies a defendant his Sixth Amendment right to counsel." *Singh*, 979 F.3d at 732 (citation modified) (citation omitted). Thus, Defendant's "failure to raise an ineffective-assistance-of-counsel claim on direct appeal does not bar the claim from being brought in a later, appropriate proceeding under § 2255." *Massaro v. United States*, 538 U.S. 500, 509 (2003). Further, the plea agreement explicitly

excludes from Defendant's waiver of rights collateral attacks to Defendant's conviction or sentence "on the basis that Defendant received ineffective assistance of counsel." (Plea Agreement 14.)

### B. Merits

Defendant must meet two requirements to prevail on his ineffective assistance of counsel claim. *See Strickland v. Washington*, 466 U.S. 668 (1984). First, he must show his attorney's representation fell below an objective standard of reasonableness. *Id.* at 688. Second, Defendant must show prejudice, *i.e.*, a reasonable probability that but for counsel's errors, the result of the proceedings would have been different. *Id.* at 694. The *Strickland* test applies to challenges to guilty pleas based on ineffective assistance of counsel. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). "Because failure to meet either prong is fatal to [a petitioner's] claim, there is no requirement that [courts] 'address both components of the inquiry if the defendant makes an insufficient showing on one.'" *Gonzalez v. Wong*, 667 F.3d 965, 987 (9th Cir. 2011) (quoting *Strickland*, 466 U.S. at 697).

"[T]he Sixth Amendment requires an attorney for a criminal defendant to provide advice about the risk of deportation arising from a guilty plea." *Chaidez v. United States*, 568 U.S. 342, 344 (2013) (citing *Padilla v. Kentucky*, 559 U.S. 356 (2010)). "[W]hen the deportation consequence is truly clear the duty to give correct advice is equally clear." *United States v. Sun Hwang*, 658 F. App'x 874, 876 (9th Cir. 2016) (citation modified) (citing *Padilla*, 559 U.S. at 369). "A criminal defendant who faces almost certain deportation is entitled to know more than that it is *possible* that a guilty plea could lead to removal; he is entitled to know that it is a virtual certainty." *United States v. Bonilla*, 637 F.3d 980, 984 (9th Cir. 2011) (emphasis in original). Thus, Defendant correctly argues that when a criminal defendant faces as a consequence of a plea deal virtually certain removal or deportation, the Sixth Amendment requires clear advisement of such consequence—general advisement that deportation is a "possibility" or even "high likely" will not do. (*See* Pet. 3, 5–8.)

Here, Defendant faces virtually certain removal or deportation as a result of the plea

agreement. A noncitizen "who is convicted of an aggravated felony at any time after admission is deportable," 8 U.S.C. § 1227(a)(2)(A)(iii), and a noncitizen who is "convicted of an aggravated felony is 'conclusively presumed' to be removable under immigration law." *Sun Hwang*, 658 F. App'x at 876 (citing 8 U.S.C. § 1228(c)). "A noncitizen convicted of an aggravated felony is not eligible for cancellation of removal." *Id.* (citing 8 U.S.C. § 1229b(a)(3)). The term "aggravated felony" includes a conviction under § 1956 if the amount of funds exceeds $10,000. *Id.* § 1101(a)(43)(J). Defendant pled to three counts of § 1956 and the funds exceeded $10,000. Therefore, Defendant faces virtually certain removal or deportation, and his counsel "was obligated to provide [him] with correct advice regarding the immigration consequences of [his] plea." *Sun Hwang*, 658 F. App'x at 876 (citing *Padilla*, 559 U.S. at 368–69).

Without determining whether the representation in this case was objectively unreasonable, Defendant's claim fails for lack of prejudice. A defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Ellis v. Harrison*, 947 F.3d 555, 559–60 (9th Cir. 2020). "[W]hen ineffective assistance causes a defendant to accept a plea bargain, a different result means that the defendant would have gone to trial or received a better plea bargain." *United States v. Avendano-Silva*, No. CR 11-00763 SOM, 2024 WL 4581650, at *18 (D. Haw. Oct. 25, 2024), *appeal dismissed,* No. 24-7826, 2025 WL 1806889 (9th Cir. June 24, 2025) (citing *United States v. Rodriguez-Vega*, 797 F.3d 781, 788 (9th Cir. 2015)). The AUSA was not amendable to a plea agreement that included a different offense or an amount less than $10,000 due to the substantial evidence against Defendant. (Att'y Decl. ¶ 7.) Thus, it was not possible for Defendant to receive a plea bargain with more favorable immigration consequences. Defendant contends that he "would have proceeded to trial on, *inter alia*, an entrapment defense, had he been properly warned that his three guilty pleas would subject him to mandatory detention." (Pet. 15.)

However, the Government correctly argues that assuming Defendant did not receive proper advisement of the immigration consequences, any insufficient advice was cured.

24-cv-02507-DMS
20-cr-00658-DMS

(*See* Opp'n 7–8.)  Both the plea agreement and the Magistrate Court warned Defendant of the immigration consequences.  The plea agreement states that his removal or deportation is "practically inevitable" and a "virtual certainty."  (Plea Agreement 8.)  It also states that "Defendant has been advised by counsel and understands" these immigration consequences.  (*Id.*)  Admittedly, the agreement also states that "Defendant further understands that the conviction in this case *may* subject Defendant to various collateral consequences, including but not limited to deportation, removal or other adverse immigration consequences," (*id.* at 9 (emphasis added)); however, Defendant confirmed to the Magistrate Court that the initials at the bottom of each page and the signature on the plea agreement were his; he read the plea agreement or had the agreement read to him in his native language; and he did not have any questions contained within the plea agreement.  Defendant's "on-the-record statements are given substantial weight and 'carry a strong presumption of verity.'"  *United States v. Chavez*, No. 113CR00392LJOSKO4, 2018 WL 3008497, at *5 (E.D. Cal. June 15, 2018).  To the extent Defendant did not understand the meaning of "practically inevitable" or "virtual certainty," or was otherwise confused about the terms of the agreement, "it was up to [him] to answer honestly and completely" during the Magistrate Court's plea colloquy.  *Krivoulian v. United States*, No. 20-CR-00029-DKW, 2023 WL 197475, at *6 (D. Haw. Jan. 17, 2023).

Judge Berg and the AUSA also confirmed the virtual certainty of Defendant's removal or deportation at the change of plea hearing.  (Pet., Ex. A, at 7.)  Defendant argues that he did not "fully understand" the phrase "virtual certainty" because he is primarily Spanish-speaking.  (*Id.* at 3.)  However, Judge Berg asked Defendant if he understood that as a result of his guilty plea, he "will be deported or removed," (*id.*, Ex. A, at 7)—Judge Berg did not use the phrase "virtual certainty" in his question.  Defendant answered affirmatively, and confirmed to the Magistrate Court that he read or was read the entirety of the agreement and did not have any questions contained within the plea agreement.  (*Id.*)  Judge Berg "independently, clearly, and unequivocally advised" Defendant of the actual immigration consequences of his guilty plea, *Krivoulian*, 2023 WL 197475, at *5, and

24-cv-02507-DMS
20-cr-00658-DMS

Defendant affirmed that he understood he will be removed or deported. Thus, Defendant "cannot show a 'reasonable probability that, but for his counsel's errors, he would not have pleaded guilty and would have insisted on going to trial,' or that 'the outcome of the plea process would have been different with competent advice.'" *Id.* (citations omitted); *cf. Doe v. Woodford*, 508 F.3d 563, 572 (9th Cir. 2007) (rejecting habeas petition when defendant "participated in a thorough plea colloquy, in which he answered in the affirmative that his plea was voluntary under the circumstances and, specifically answered in the affirmative when asked if he had had enough time to discuss the plea with his attorneys"). Any conflicting statements during the sentencing hearing were made after Defendant "already pled guilty to his crime and acknowledged the immigration consequences of doing so." *Krivoulian*, 2023 WL 197475, at *6. "Therefore, any confusion [Defendant] may have experienced during sentencing is irrelevant to whether he understood his guilty plea and its consequences during the . . . plea hearing." *Id.* Accordingly, the Court denies Defendant's petition.

## IV. CONCLUSION

For the foregoing reasons, Defendant's petition is **DENIED**.[2] The Court also denies a certificate of appealability because Defendant has not made "a substantial showing of a denial of a constitutional right." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

**IT IS SO ORDERED.**

Dated: April 9, 2026

Hon. Dana M. Sabraw
United States District Judge

---

[2] While a § 2255 petitioner is generally entitled to a hearing, 28 U.S.C. § 2255, "an expansion of the record accompanied by supplemental briefs will suffice for that purpose" *See Rodriguez-Vega*, 797 F.3d at 791. Here, the Court ordered Defendant's former counsel to file a declaration to explain the advisements provided to Defendant, including any immigration consequences, which Defendant responded to. Therefore, the Court finds an oral hearing is unnecessary.

24-cv-02507-DMS
20-cr-00658-DMS